# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 10-840


WADE BROUSSARD

VERSUS

LOUISIANA RADIO COMMUNICATIONS


**********


APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - DISTRICT 4
PARISH OF LAFAYETTE, NO. 07-09739
SAM L. LOWERY, WORKERS' COMPENSATION JUDGE


**********


**MARC T. AMY**
**JUDGE**


**********


Court composed of Oswald A. Decuir, Marc T. Amy, and J. David Painter, Judges.

**MOTION DENIED.  AFFIRMED AS AMENDED.  ADDITIONAL
ATTORNEY FEES AWARDED.**


Michael B. Miller
Post Office Box 1630
Crowley, LA   70527-1630
(337) 785-9500
COUNSEL FOR PLAINTIFF/APPELLANT:
    Wade Broussard

Jeffrey J. Warrens
Johnson, Stiltner & Rahman
Post Office Box 98001
Baton Rouge, LA   70898-8001
(225) 231-0652
COUNSEL FOR DEFENDANT/APPELLANT:
    Louisiana Radio Communications

AMY, Judge.

The employer provided wage benefits for a period of time after the claimant sustained an injury, but ceased compensation due to its contention that it offered an adequate, modified position. Although the employer later provided indemnity benefits after the claimant required surgery, the claimant asserted that indemnity benefits were due prior to surgery. The workers' compensation judge denied benefits during that period, finding that the employer offered an adequate position, but confirmed the claimant's entitlement to benefits after surgery and to medical treatment. The employer and its insurer were also cast with penalties and attorney fees. The parties appeal. For the following reasons, we affirm the judgment as amended and award additional attorney fees for work performed on appeal. We deny the defendants' motion to supplement exhibits.

## Factual and Procedural Background

Wade Broussard, the claimant, fractured his left thumb while working for Louisiana Radio Communications, Inc. (LRC) on October 27, 2007. Mr. Broussard was able to work, in a modified position, until his condition worsened. During a November 12, 2007 visit with his orthopedic surgeon, Dr. Matthew Williams, surgery was recommended due to an angulation of the thumb which was observed. Dr. Williams subsequently indicated that the claimant was unable to work in light of the need for surgery.

Beginning November 12, 2007, LRC continued to pay the claimant wages. However, LRC's comptroller, Phyllis Cole, testified that she communicated with Dr. Williams on November 24, 2007, that LRC could offer light duty work. The claimant did not return to work and, due to its contention that it had suitable work available to the claimant, LRC terminated wages at that time. LRC asserted that it would have

been able to accommodate restrictions placed on the claimant's work per a November 27, 2007 letter[1] from Dr. Williams to Larry Whaley, the claimant's supervisor. According to LRC, Dr. Williams never explained that the claimant was further disabled.

In December 2007, the claimant instituted this matter against LRC and its insurer, Louisiana Workers' Compensation Corporation (LWCC), seeking indemnity benefits, penalties and attorney fees. Subsequently, in October 2008, Dr. Williams performed a fusion on the claimant's thumb. Thereafter, the employer, through LWCC, began payment of temporary total disability (TTD) benefits. It continued to do so at the time of the underlying hearing.

At the resolution of the hearing, the workers' compensation judge found the claimant entitled to temporary disability benefits, but only commencing October 22, 2008, the day after the fusion surgery. It ordered that the employer receive credit for those benefits paid and further concluded that the claimant was entitled to "all reasonable and necessary medical treatment." The workers' compensation judge assessed $6,000.00 in penalties[2], an attorney fee in the amount of $19,575.00, and

---

[1] In the November 27th letter, Dr. Williams set forth the claimant's treatment plan following surgery, and that:

> Fracture healing requires approximately 10-12 weeks. During this time he will be in a splint, which will allow motion of the thumb, however he will be limited in his activities.

> Mr. Broussard has been instructed not to participate in any activities that require any heavy lifting, pushing or pulling, climbing ladders, or other activity which could require use of the left hand in a manner resulting in a displacement of his fracture before it is healed, which could require repeat surgical intervention. Activities indoors such as clerical work would be appropriate. Outdoor work, which requires no lifting or activities as described above of the left hand including simple observation and note taking are appropriate as they could require only one hand.

[2] The workers' compensation judge awarded a $2,000.00 penalty for failure to provide physical therapy, and two, $2,000.00 penalties for two instances of inaccurate mileage reimbursement.

2

costs in the amount of $626.70.

From that ruling, the claimant appeals and asserts that:

1.    The worker's compensation judge erred in failing to include in the
      judgment that Wade Broussard was entitled to $522.00 per week
      in weekly compensation benefits.

2.    It was error for the worker's compensation judge to fail to award
      weekly compensation benefits for the period of October 28, 2007
      until October 21, 2008.

3.    It was error for the worker's compensation judge to fail to award
      penalties and attorney fees due to defendants' failure to pay
      weekly compensation benefits.

LRC and LWCC (the defendants) also appeal, asserting that:

1.    The Workers' Compensation Judge committed legal error in
      awarding future medical expenses.

2.    The Workers' Compensation Judge committed legal error and was
      manifestly erroneous in finding that LWCC reduced and
      underpaid medical mileage submitted by Broussard on August 15,
      2008.

3.    The Workers' Compensation Judge committed legal error in
      awarding excessive attorney fees.

The defendants also filed a motion to supplement exhibits with original documents.

**Discussion**

*Compensation Amount*

In his first assignment of error, the claimant seeks amendment of the workers'

compensation judge's ruling to commemorate the claimant's disability rate of $522.00

per week. The claimant correctly points out that the parties stipulated to this figure

at the hearing.[3] As the request is without objection from the defendants in their brief

_____

[3] The transcript provides:

MR. MILLER [Counsel for the claimant]:
          Yeah. Judge, there may be some other benefits other than that, but we can
stipulate that his comp rate is Five Twenty-Two.
          Can we do that?

3

to this court, we amend the judgment to reflect the weekly compensation rate of $522.00.

*Indemnity Benefits - October 28, 2007 through October 21, 2008*

The workers' compensation judge found Mr. Broussard temporarily totally disabled, but only beginning October 22, 2008, the time period of Mr. Broussard's second thumb surgery, a fusion. The workers' compensation judge explained that: "Prior to this date, [the claimant] was physically limited in his physical condition not temporarily totally disabled." The claimant objects to the determination and asserts in his brief that "[t]here is substantial medical evidence that Mr. Broussard was taken completely out of work during the period of time between October, 2007 and October, 2008."

The claimant points to November 2007 work status reports from Dr. Williams and, particularly, to a November 27, 2007 work status report which bears an inscription of: "No work pending treatment[.]" Further, the claimant contends that other references from Dr. Williams in mid-to-late 2008 also indicate a lack of clearance to return to duty. Although the defendants contend that modified job positions were offered to the claimant, the claimant argues that no modified position could have been offered until June 2008, when a modified job assessment was prepared.

---

MR. WARRENS [Counsel for the defendants]:
Yeah, that's fine.

JUDGE LOWERY:
That stipulation would mean that that's the base rate?

MR. MILLER:
That's the maximum, Judge.

4

The claimant sought TTD benefits for this initial period and, at least arguably, supplemental earnings benefits (SEBs) in the alternative. Louisiana Revised Statutes 23:1221(1) provides that a claimant seeking TTD benefits must prove "by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self employment[.]"

Further, a claimant's pursuit of SEBs is guided by La.R.S. 23:1221(3), which establishes that a claimant must first prove, by a preponderance of the evidence, that he or she is unable to earn ninety percent of his or her pre-injury wage due to a work-related injury. Thereafter, an employer seeking to defeat that claim or establish the claimant's earning capacity, must prove, by a preponderance of the evidence, that the claimant is physically able to perform a certain job and that this job was offered to the claimant or was available to him or her in the community or region. *See* La.R.S. 23:1221(3)(c)(i). *See also Seal v. Gaylor Container Corp.*, 97-0688 (La. 12/2/97), 704 So.2d 1161.

In finding indemnity benefits appropriate beginning October 22, 2008, the workers' compensation judge explained as follows in reasons for ruling:

> Let me first address the question of when Mr. Broussard is entitled to be considered totally temporarily disabled. This is best done by walking through the chronology of events as they developed after the October 27, 2007 [accident]. After his treatment in the emergency room, Mr. Broussard continued his employment in a modified capacity until his physician, Dr. Williams, put him on a no-work status as of November 12, 2007, pending treatment. Testimony was at that point, the employer informed Dr. Williams that there were, in fact, jobs in the company that required the use of only one hand; and Mr. Broussard was still needed as an employee. Dr. Williams responded to the employer and outlined in detail the restrictions that would apply to his patient in any job including primarily the use of his left hand.

5

The problem here is that on November 27, 2007, the same day, the adjuster testified that she had in her hands two pieces of paper from Dr. Williams both with the same date. One returned Mr. Broussard to work with restrictions, and the other took him off work. Claimant's counsel argued that since these two documents were obviously in conflict the insurer should have conducted an investigation to determine which was correct. The situation of having these two apparently conflicting documents is not quite as bizarre as counsel makes it sound.

The evidence suggests that the following is probably an accurate chronology of events that led to the seemingly contradictory orders from the treating physician, Dr. Williams. It appears that Dr. Williams did, in fact, sign a no-work slip dated November 27, 2007. Also on November 27th, the same day, the doctor forwarded a letter to the employer stating that it was prepared to offer Mr. Broussard one of several positions which would require the use of only one hand, thus complying with the restrictions which the doctor had outlined. At this point, the company apparently assumed that Mr. Broussard was not being prevented from doing any type of work at all, but rather was being restricted in the type of work because of his less-than-functional left hand which had been injured. The company's thinking seems to have been a reasonable assumption at the time; and as it turns out, a correct one considering that at his later deposition, Dr. Williams indicated clearly that at the time he meant to restrict not prohibit Mr. Broussard's work activities. If Dr. Williams meant to totally disable this man, why on earth was he so explicit in describing these restrictions he was placing on him?

I am aware that in *Harrington versus Coastal* [*Construction & Engineering*, 96-681(La.App. 3 Cir. 12/11/96), 685 So.2d 457], the Third Circuit requires that in deciding whether an employer was arbitrary and capricious in denying treatment, the Court must focus on what the employer knew at the precise time of denial. The evidence indicates the letter from Dr. Williams could mean nothing more than that Mr. Broussard was to be disabled from a certain job, not disabled from all meaningful gainful employment.

Now, it's difficult to see how the claimant can support his contention that he was at no-work status when his physician's letter indicated that his work was to be limited, not totally prohibited. All the correspondence I read from Dr. Williams indicated he was very specific as to what his patient could not do. This is different from saying he was totally disabled. It also appears that these restriction in the November 24th letter were not revoked, at least, until October 22, 2008 when the insurer initiated temporary total disability benefits.

An important question here is: Did the employer offer a position in line with the restrictions imposed by the physician, and did the

claimant refuse to accept this position? Claimant's counsel is of the opinion, firm opinion, that in order for an employer to claim that he has offered a specific job which meets the restrictions required by the treating physician, then the employer must present the injured worker with a specific position. It is not sufficient, according to counsel, to offer to put the employee to work in any of a number of jobs any of which may respect the physician's restrictions.

The credible evidence here is that the controller of the company told Mr. Broussard and Dr. Williams that a job was readily available. The description of the job offered during testimony seem[s] to be very plausible and functional for Mr. Broussard. One of them included being what was called a "spotter" who essentially just watches that the cable's [sic] being stretched. Testimony does not shed much light [on] why Mr. Broussard did not take the modified position which he was assured would require absolutely no use of his left hand. Counsel insists that no real specific job was ever offered to his client, but the evidence taken as a whole showed that he decidedly was.

"Controversies around the specific job" being offered usually revolve around employers who offer sham jobs that really don't exist except for the sole nefarious purpose of providing a defense against an SEB allegation brought by a worker. That doesn't seem to be the case here. The evidence is convincing that the company was sincere when its management made the representation that it would have hired Mr. Broussard and taken care to respect the requirements of his physician, however, Mr. Broussard declined. It is really the function of the Court, not the worker to be the arbiter of whether a created or modified job falls within the restrictions of the treating physician.

On appeal, the factual findings of a workers' compensation judge are reviewed pursuant to the manifest error or clearly wrong standard of review. *Banks v. Indus. Roofing & Sheet Metal Works, Inc.*, 96-2840 (La. 7/1/97), 696 So.2d 551.

We find no manifest error in the determination that disability benefits were appropriate commencing October 22, 2008. First, the claimant either worked in a modified position and/or was paid wages for the time period immediately after the accident. Further, the defendants offered evidence permitting the workers' compensation judge to determine that the employer demonstrated a willingness to create a job for the claimant, specifically addressing the limitations, whatever those

7

may have been. Although the claimant could obviously not return to his former position, Dr. Williams anticipated that certain restricted duty would be appropriate. Both Dr. Williams' letter of November 27th and his deposition support the defendants' assertion that some type of work was appropriate. The workers' compensation judge could have further determined that the "no work" status certifications relied upon by the claimant related to Dr. Williams' contention that the claimant could not return to his previous position, but that the work restrictions did not include the type of clerical or observational work approved by Dr. Williams in his deposition and in the November 27th letter.

Further, Mr. Whaley and Ms. Cole testified to their willingness to accommodate the restrictions with "ground work" and possible errand running. Ms. Cole noted that they would have "made the job for him specifically." They also explained that the claimant was unresponsive to their attempts to have him return to work in this capacity. This evidence permitted the workers' compensation judge to determine that indemnity benefits[4] were inappropriate during this time period. In light of this finding, the claimant's contention that penalties and attorney fees were due for the failure to provide benefits for this time period is rendered moot.

These assignments lack merit.

*Future Medical Expenses*

The workers' compensation judge's ruling included an order for "all reasonable and necessary medical treatment." On appeal, the defendants contest the inclusion for fear that they could be found to violate this order assuming a dispute over future

---

[4] The defendants contend that the issue of supplemental earnings benefits was not raised in the proceedings below as the claimant always contended that he was totally disabled. Alternatively, the defendants contend that the issue of SEBs is *res judicata*. However, review of the record indicates that the workers' compensation judge's ruling is supported by the evidence under either standard.

medical care arises. Therefore, they ask that this portion of the judgment be vacated.

Certainly, La.R.S. 23:1203(A) provides that, "[i]n every case coming under this Chapter, the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment . . . ." Thus, as an operation of law, an injured employed entitled to compensation benefits is entitled to all reasonably and necessary medical treatment. However, at the instant proceeding, and other than a penalties issue that stemmed from failure to pay for physical therapy, the compensability of certain medical expenses was not at issue. Thus, the ruling under review could not be construed to relate to any medical expenses that were found compensable. Other "reasonable and necessary medical treatment" has not yet been addressed and is inappropriate for inclusion in the judgment. *See Austin v. Howard Discount Stores, Inc.*, 569 So.2d 659 (La.App. 2 Cir. 1990). Accordingly, we amend the judgment to remove the clause "as well as all reasonable and necessary medical treatment."

*Claimant's Exhibit 10*

The claimant sought and, as will be discussed below, was awarded penalties for mileage reimbursed to the claimant for a visit with Dr. Williams. By Claimant's Exhibit 10, the claimant attempted to demonstrate that the mileage form submitted reported a forty-three mile trip. Yet, the claimant was only reimbursed for a forty-mile trip. In support of their position that the claimant was correctly reimbursed for a forty-mile trip, the defendants submitted Defendants' Exhibit 7, which included a mileage form for a forty-mile trip. Neither party, at the hearing, was able to produce the original mileage submission document. Thus, the parties submitted copies. However, as stated in the defendants' brief, Defendants' Exhibit 7, "appears to

9

indicate that the zero is written over Whiteout." Claimant's Exhibit 10, which reports a forty-three mile trip, "does not appear to contain Whiteout."

On appeal, the defendants contend that the workers' compensation judge erred in allowing Claimant's Exhibit 10 into evidence in light of La.Code Evid. art. 1003, which provides that:

> A duplicate is admissible to the same extent as an original unless:
>
> (1)   A genuine question is raised as to the authenticity of the original;
>
> (2)   In the circumstances it would be unfair to admit the duplicate in lieu of the original; or
>
> (3)   The original is a testament offered for probate, a contract on which the claim or defense is based, or is otherwise closely related to a controlling issue.

As, the defendants contend, a "genuine question existed as to the authenticity of the third page of Claimant's Exhibit 10 in relation to the content of the document at the time that it was forwarded to LWCC[,]" the copy should have been excluded.

We conclude that, in this instance, the workers' compensation judge's acceptance of the exhibit was not an abuse of discretion. Several factors support this result. First, workers' compensation proceedings are often conducted with more relaxed rules of evidence and procedure. *Taylor v. Tommie's Gaming*, 04-2254 (La. 5/24/05), 902 So.2d 380. Further, both parties presented copies of the documents and the issue of whether "40" was written over an altered form was fully explored at the hearing. The admission of the copies under these circumstances was not an abuse of discretion.

This assignment lacks merit.

*Penalty*

The defendants' next assignment also relates to the parties' mileage dispute insofar as they contest the award of a $2,000.00 penalty for the reimbursement of forty miles of travel rather than forty-three miles of travel. They contend that the claimant simply failed to meet his burden of proving that "LWCC received a document which reported 43 as opposed to 40 miles[.]" They note that the claimant failed to produce a witness who was able to "establish that a mileage form containing the higher number was in fact mailed to LWCC" and that he produced no evidence indicating that LWCC altered the form.

In awarding penalties on this point, the workers' compensation judge determined that:

> The mileage issue is perplexing. Mr. Broussard's attorney alleges his client, on August 24, 2008, submitted a request that LWCC pay mileage at the rate of Forty-Three Cents ($.43)[5] a mile. Someone at the insurance office, counsel alleges, put white-out on the Forty-Three number and instead inserted Forty, and that was the rate that was paid. Defense counsel is correct, of course, when he says that Mr. Broussard cannot actually prove the insurer made the changes. On the other hand, somebody made the change, that's clear. I'm at a loss as to why Mr. Broussard would have done so. Other than the post office, who could have made the change except the insurer? Mr. Broussard was underpaid, and he should not have been.

On review, we consider the decision to impose penalties and attorney fees subject to the manifest error or clearly wrong standard as it is essentially a factual issue subject to the manifest error or clearly wrong standard of review. *Authement v. Shappert Eng'g*, 02-1631 (La. 2/25/03), 840 So.2d 1181. In this situation, we find no manifest error in the determination to assess a penalty for the mileage

---

[5] We note that the trial court misspoke on the number in controversy. The rate of reimbursement was not at issue. Rather, it was the number of miles submitted for reimbursement which was contested.

reimbursement. The reasons for ruling indicate that the workers' compensation judge considered the evidentiary concerns again raised by the defendants on appeal. As we find no manifest error in these determinations, we do not disturb this penalty award on appeal.

This assignment lacks merit.

*Attorney Fee*

The defendants also contest the imposition of a $19,575.00 attorney fee[6] in favor of the claimant. They contend the central issue in this case involved the claimant's entitlement to indemnity benefits for the time period before October 21, 2008. Absent this claim, the defendants contend, the claimant's attorney's work on appeal did not necessitate the eighty-seven hours of work evidenced by the attorney's affidavit in support of the attorney fee claim. They further argue that the claimant's counsel's hourly rate of $225.00 is "above the norm in workers' compensation matters." Thus, they suggest that the figure awarded is unreasonable and should be reduced.

In awarding attorney fees, the workers' compensation judge explained:

> The defense urges that any attorney's fees it is required to pay should be reasonable and further argues [] that the plaintiff's demand is anything but that. There are several factors which the Court considers in assessing the amount of attorney's fees, and we all know what they are. This was an extraordinarily complex case with a unique set, probably singularly so, [of] circumstances; and no one present today believes that this particular case of litigation is in any fashion completed now.
>
> Plaintiff counsel presented the Court with an affidavit explaining hour by hour precisely the amount of time he spent on the matter which he calculates to be eighty-seven hours. His hourly charge for cases he takes on [a] contingency basis is Two Hundred and Twenty-Five Dollars

---

[6] The attorney fee is comprised of a $3,173.83 award to claimant's previous counsel, an intervenor, and $16,401.17 to claimant's trial counsel.

($225.00) which is well within the norm for matters that got to trial in this area. It is certainly well within the norm for an attorney with more than twenty-nine years of trial experience including at the appellate level. His fee request is reasonable, not modest, but reasonable.

. . . Attorney's fees are set at Nineteen Thousand Five Hundred and Seventy-Five Dollars ($19,575.00), along with cost in the amount of Six Hundred Twenty-Nine Dollars and Seventy-Nine Cents ($629.79).

In fixing an amount of attorney fees in a workers' compensation case, the workers' compensation judge may consider factors such as the degree of skill and ability exercised by the attorney, the amount of the claim, the amount recovered by the claimant, and the amount of time the attorney dedicated to the case. *Langley v. Petro Star Corp. of La.*, 01-0198 (La. 6/29/01), 792 So.2d 721. The amount of the attorney fee is subject to the discretion of the workers' compensation judge, provided the record supports the amount awarded. *Jackson v. Christus Health Cent. La.*, 05-0983 (La.App. 3 Cir. 2/1/06), 922 So.2d 748.

Our review indicates that the amount awarded to the claimant's counsel is supported by the record in light of the reasons for ruling. The workers' compensation judge recognized that this case was a complex one, with issues surrounding the evolving nature of the claimant's disability and an unclear situation regarding the claimant's capacity to return to work. Additionally, the claimant prevailed in three separate penalty awards. Further, in accepting counsel's hourly rate, the workers' compensation judge noted the attorney's experience in the workers' compensation field. While the defendants assert that this hourly rate exceeds that typical in the field, no evidence exists in this regard. Accordingly, we find no abuse of discretion in the attorney fee award.

This assignment lacks merit.

13

*Attorney Fee on Appeal*

In his final assignment, the claimant seeks an additional attorney fee for work performed on appeal. As the claimant was successful in his defense of this matter, we award an additional $2,000.00 for work performed on appeal.

*Motion to Supplement Exhibits*

The defendants have also filed a Motion to Supplement Exhibits with Original Documents, which relates to the mileage reimbursement form at issue in Claimant's Exhibit 10 and Defendant's Exhibit 7. As discussed above, both parties filed copies of the original documents submitted. In their motion, the defendants contend that: "While preparing the appellate brief in this matter, undersigned counsel located the original documents which comprise Claimant's Exhibit 10 and Defendant's Exhibit 7." Therefore, the defendants seek to supplement the appellate record with the original documents. This court referred the motion to the merits of this opinion.

Although the claimant has filed no opposition to the motion, we deny the claimant's motion. Chiefly, we note that appellate courts are prohibited from receiving new evidence. *B.W.S., Jr. v. Livingston Parish Sch. Bd.*, 06-1981 (La. 8/16/06), 936 So.2d 181. Instead, an appellate court limits its review to the record developed in the trial court. La.Code Civ. P. art. 2164. While the probative nature of the original documents may arguably be negligible in light of the copies previously introduced, we note that much conflict existed below with regard to the two exhibits at issue. Accordingly, we find it appropriate to deny the motion.

**DECREE**

For the foregoing reasons, the Motion to Supplement Exhibits With Original Document is denied. The Office of Workers' Compensation judgment is amended to

indicate that the claimant's indemnity compensation rate is $522.00 per week. The judgment is vacated insofar as it ordered the defendants to pay for all reasonable and necessary medical treatment. Accordingly, the judgment, insofar as it relates to workers' compensation indemnity benefits, is recast as follows:

> IT IS ORDERED, ADJUDGED AND DECREED that WADE BROUSSARD was injured in the course and scope of his employment with LOUISIANA RADIO COMMUNICATIONS, INC., on October 27, 2007, and is entitled to temporary total disability benefits in the amount of $522.00 per week beginning October 22, 2008, subject to a credit for any earnings or weekly compensation benefits paid.

The claimant is awarded an additional $2,000.00 for work performed on appeal. Costs of this proceeding are assessed one-half to the claimant-appellant, Wade Broussard, and one-half to the defendants-appellants, Louisiana Radio Communications, Inc. and Louisiana Workers' Compensation Corporation.

**MOTION DENIED. AFFIRMED AS AMENDED. ADDITIONAL ATTORNEY FEES AWARDED.**