STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-914

TERRY RIDEAUX

VERSUS

KOHL'S DEPARTMENT STORES, INC.

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 3
PARISH OF CALCASIEU, NO. 10-05378
SAM L. LOWERY, WORKERS' COMPENSATION JUDGE

**********

PHYLLIS M. KEATY
JUDGE

**********

Court composed of Oswald A. Decuir, James T. Genovese, and Phyllis M. Keaty, Judges.

AFFIRMED AS AMENDED.

Marcus Zimmerman
Attorney at Law
4216 Lake Street
Lake Charles, Louisiana 70605
(337) 474-1644
Counsel for Plaintiff/Appellee:
    Terry Rideaux

Antonio Le Mon
Attorney at Law
321 North Vermont Street, Suite 104
Covington, Louisiana 70433
(985) 898-0024
Counsel for Defendant/Appellant:
    Kohl's Department Stores, Inc.

**KEATY, Judge.**

Kohl's Department Stores, Inc. (Kohl's), appeals a judgment rendered by the workers' compensation judge (WCJ) in favor of its former employee, Terry Rideaux (Rideaux). Rideaux answers the appeal. For the following reasons, we amend the judgment, affirm as amended, and award Rideaux $3,500.00 in attorney fees for work done on this appeal.

## FACTS AND PROCEDURAL HISTORY

Rideaux filed a 1008 Disputed Claim for Compensation (1008) against Kohl's on June 14, 2010, regarding an injury she suffered to her right arm on September 7, 2009. She alleged that she was working in the warehouse moving boxes and hanging clothes when her right arm "popped." According to the 1008, Kohl's denied her claim and had not paid her any wage benefits nor authorized any medical treatment for her injuries. Rideaux sought indemnity and medical benefits, treatment by her choice of physician, penalties, and attorney fees.

Kohl's answered Rideaux's claim, denying that she had suffered a compensable accident and claiming that she had misrepresented her prior medical history. It later filed a motion for summary judgment seeking to have Rideaux's claim dismissed based on its contention that she did not suffer an "accident" at work, within the meaning of the La.R.S. 23:1021(1), and, thus, it owed her no workers' compensation benefits. After a hearing, the WCJ denied the motion, finding that a genuine issue of material fact remained.

The matter was tried on February 23, 2011, and taken under advisement. Oral reasons for judgment were rendered on April 25, 2011. Written judgment was rendered in the substance of the oral reasons on May 3, 2011, as follows: 1) Rideaux suffered a compensable work accident on or about September 2, 2009; 2) Rideaux is entitled to and Kohl's is responsible for paying temporary total

disability (TTD) benefits from October 13, 2009; 3) Rideaux is entitled to and Kohl's is responsible for all reasonable and necessary medical benefits, to include treatment by claimant's choice of physician and payment of any outstanding medical expenses related to the work accident; 4) Kohl's did not reasonably controvert Rideaux's claims for benefits entitling her to an award of $4,000.00 in penalties as well as attorney fees in the amount of $14,500.00; and 5) Kohl's is liable for all costs and for judicial interest on the awards made in Rideaux's favor herein.

Kohl's now appeals, asserting that the WCJ committed manifest error: 1) in finding that Rideaux met her burden of proving an "accident" as defined by the Louisiana Workers' Compensation Act (LWCA); 2) in finding that Rideaux met her burden of proving by a preponderance of the evidence that she sustained an accident while in the course and scope of her employment with Kohl's; 3) by awarding Rideaux disability benefits without any evidence to support any disability to justify such award; 4) by finding that Kohl's failed to reasonably controvert the alleged work accident and awarding Rideaux attorney fees and penalties; and 5) in awarding Rideaux $14,500.00 in attorney fees without her having submitted any evidence to support such an award. Rideaux answers the appeal to request an award of additional attorney fees for the work done on this appeal.

## DISCUSSION

We recently discussed the standard of review to be employed in workers' compensation cases, noting:

> Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. *Smith v. Louisiana Dep't of Corrections*, 93-1305 (La. 2/28/94); 633 So.2d 129. In applying the manifest error standard, the appellate court

2

must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Stobart v. State,* 617 So.2d 880 (La.1993). Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. *Id.* Thus, "if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Sistler v. Liberty Mut. Ins. Co.,* 558 So.2d 1106, 1112 (La.1990).

"The determination of coverage is a subjective one in that each case must be decided from all of its particular facts." *Jackson v. Am. Ins. Co.*, 404 So.2d 218, 220 (La.1981). This court has held that, in light of that standard of review, "great deference is accorded to the [workers' compensation judge's] factual findings and reasonable evaluations of credibility." *Cent. Lumber Co. v. Duhon*, 03-620, p. 3 (La.App. 3 Cir. 11/12/03), 860 So.2d 591, 593, *writ denied*, 04-315 (La. 4/2/04), 869 So.2d 880 (quoting *Garner v. Sheats & Frazier*, 95-39, p. 7 (La.App. 3 Cir. 7/5/95), 663 So.2d 57, 61).

*Green v. Nat'l Oilwell Varco*, 10-1041, pp. 3-4 (La.App. 3 Cir. 4/27/11), 63 So.3d 354, 357-58 (quoting *Foster v. Rabalais Masonry, Inc.*, 01-1394, pp. 2-3 (La.App. 3 Cir. 3/6/02), 811 So.2d 1160, 1162, *writ denied,* 02-1164 (La. 6/14/02), 818 So.2d 784).

Rideaux testified that she was fifty-five years old at the time of trial. After recently relocating from Houston, Texas, to Louisiana to take care of her aging father, she was hired by Kohl's in August of 2009 to work in a new store it was opening in Lake Charles. She worked part time, making $7.50 an hour, and was assigned to the jewelry department. She reported to work early on the morning of September 7, 2009, and was told that she needed to work in the warehouse. Her duties that day entailed removing boxes from a fast-moving conveyor belt, opening the boxes with a box cutter, removing garments from the boxes, and hanging the garments on six-foot tall rolling racks. Rideaux, who is five feet tall, had to stand on her tip toes in order to hang the clothes on the top rack.

Rideaux testified that she worked non-stop in the warehouse for approximately five hours, during which time she continuously felt stress and tightening in her right shoulder but, nonetheless, continued working. After completing her work in the warehouse, she did not feel well, so she sat on the floor until she was told to relocate to the jewelry department. Upon returning home, she was attempting to lift her shirt off over her head to take a shower when her right shoulder "popped." Rideaux had a previously scheduled appointment the next day with her gynecologist, Dr. Gisele McKinney of the Southwest Louisiana Center for Health Services (SWLA clinic), for an unrelated matter. During the visit, Rideaux complained to Dr. McKinney of her right shoulder pain and told her about having worked in the warehouse the day before. Dr. McKinney requested another physician with whom she worked, Dr. Lesly Varghese, a board certified family practitioner, to examine Rideaux. According to Rideaux, Dr. Varghese recommended that she undergo an MRI "due to the knot" on her right shoulder.

On September 25, 2009, Rideaux reported her injury to her supervisor, Betty Scott, who directed her to speak to Robert Davis, the store's manager. She then spoke with Mr. Davis who gave her some workers' compensation documents to complete. She completed the paperwork in Mr. Davis' office and returned to work. Because the pain in her right shoulder continued to get worse with activity, she stopped working at Kohl's on October 27, 2009, when she could no longer perform her job. She has not worked since that time.

Rideaux continued to seek treatment at the SWLA clinic. An MRI of her right shoulder performed on October 29, 2009, at LSU University Medical Center (UMC) in Lafayette, revealed that she had minimal tendonitis of the supraspinatus

muscle tendon and degenerative changes in her acromioclavicular joint.[1]  There is a letter in Rideaux's medical records from Dr. Hilma Green, an internist in the SWLA clinic, dated May 21, 2010, stating that Rideaux was temporarily disabled from working due to her September 2009 shoulder injury.  She received a cortisone injection in March of 2010, from Dr. Mark Landry at UMC, which provided relief for approximately two months, but her pain worsened when the shot wore off.

Following a June 15, 2010 visit, Dr. McKinney charted that Rideaux's right shoulder pain was increasing in severity and causing neck pain and weakness and paresthesia in her right forearm.  According to Dr. McKinney's notes, Rideaux was taking anti-inflammatory medication to treat chronic inflammation of her shoulder, and she was awaiting surgery to correct the defect.  At a July 6, 2010 visit, Dr. McKinney noted that Rideaux's right shoulder pain had increased in severity and that surgery had been discussed, but it could not be performed while the inflammation was still elevated.  Rideaux then saw Dr. Anand Roy, an internist from Lake Charles, who referred her to Dr. Brett Cascio, a sports medicine physician.  After examining Rideaux on November 11, 2010, Dr. Cascio noted Rideaux's complaint of her right shoulder pain waking her up at night.  He was of the impression that she suffered from tendonitis of her right rotator cuff and right bicep.  He gave Rideaux a steroid injection which, according to Rideaux, provided her with "90% pain relief."

As to her current condition, Rideaux testified that her whole life has changed and that her right shoulder is "still not right."  She does not sleep well, and when she is able to sleep, she is awakened by pain.  There is still a "knot" in her right

_____

[1] The acromioclavicular joint, or AC joint, is located at the top of the shoulder.  It allows the ability to raise the arm above the head.

5

shoulder, and she has diminished strength in her right hand. She can no longer raise her right hand over her head, and she must now take showers instead of baths.

According to Rideaux, Kohl's never paid her any wage benefits, never authorized any medical treatment, never offered her a job with modified duties, and never offered her vocational rehabilitation since her 2009 work accident.

Betty Scott, an assistant store manager and Rideaux's immediate supervisor when she worked for Kohl's, confirmed that Rideaux reported the accident to her on September 25, 2009, telling her that she hurt her arm at home and heard her arm pop before taking a shower. She immediately sent Rideaux to speak with Mr. Davis to fill out an accident report.[2] The accident report stated that Rideaux was cleaning shelves when she heard her right arm make a popping sound and that she had sought treatment at a local doctor's office. After reading the accident report, Ms. Scott told Mr. Davis that Rideaux related a different version of the accident to her, instead telling Ms. Scott that she hurt her arm and heard her arm pop at home.

Ms. Scott testified that after Rideaux's accident, Kohl's offered her a position as a full-time jewelry supervisor. Rideaux accepted the position but resigned after a week. With regard to Rideaux returning to Kohl's to work as a part-time sales associate, Ms. Scott acknowledged that Rideaux would have to repeatedly bend and stretch her arm to stock the jewelry cases but stated that Rideaux could have gotten another associate to help her if she was not capable of performing her duties because Kohl's "whole structure is based on teamwork."

---

[2] The Employer Report of Injury form completed by Mr. Davis was offered and accepted into evidence as Plaintiff's Exhibit One.

*Personal Injury by Accident*

A worker bringing a compensation action against his employer bears the burden of proving, as a threshold requirement, that he suffered "personal injury by accident arising out of and in the course of his employment." La.R.S. 23:1031(A); *Bruno v. Harbert Int'l Inc.*, 593 So.2d 357 (La.1992). The word "accident" as used in La.R.S. 23:1031 is defined as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." La. R.S. 23:1021(1).

> A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. Corroboration of the worker's testimony may be provided by the testimony of fellow workers, spouses or friends. Corroboration may also be provided by medical evidence.
>
> In determining whether the worker has discharged his or her burden of proof, the trial court should accept as true a witness's uncontradicted testimony, although the witness is a party, absent "circumstances casting suspicion on the reliability of this testimony." *West* [*v. Bayou Vista Manor, Inc.*], 371 So.2d [1146, 1147 (La.1979);] *Holiday v. Borden Chemical*, 508 So.2d 1381, 1383 (La.1987).

*Bruno*, 593 So.2d at 361 (citations omitted). The determination of whether an injury occurred in the course and scope of one's employment "is a mixed question of law and fact." *Winkler v. Wadleigh Offshore, Inc.*, 01-1833, p. 3 (La.App. 4 Cir. 4/24/02), 817 So.2d 313, 316, *writ denied*, 02-1429 (La. 9/13/02), 824 So.2d 1174.

In its first two assignments of error, Kohl's insists that Rideaux did not meet her burden of proving that she sustained an accident at work. It claims that she failed to point to any specific event at work from which she experienced immediate and identifiable symptoms of injury. To the contrary, it points to Rideaux's

testimony that she first felt pain when taking off her shirt at home after returning home from work on September 7, 2009. In its brief to this court, Kohl's asserts that Rideaux lacks credibility, claiming that she gave "at least **three grossly different** versions of the alleged accident and as to when her right shoulder popped." (Emphasis added.) Kohl's also attaches great significance to the fact that the accident report lists Rideaux's date of injury as September 2, 2009, rather than September 7, 2009, as listed on her 1008.

Rideaux counters that she has consistently maintained that her right shoulder stiffened and felt strained while she worked hanging garments on a six-foot tall rack for five hours in the Kohl's warehouse on September 7, 2009. She further maintains Dr. McKinney's notes of September 8, 2009, corroborate her claim that she suffered an injury at work on the preceding day. Finally, Rideaux submits that any discrepancies between her testimony and the Kohl's accident report form were noted at trial and found to be insignificant by the WCJ.

In rejecting Kohl's argument that Rideaux failed to prove that she suffered a compensable workplace accident, the WCJ stated:

> Now, I will grant that Mrs. Rideaux perhaps could have been a little better historian and might, in retrospect, have done a little better job in doing all those things that a worker, in an ideal situation, ought to do in order to prevail at an eventual workers' compensation trial; but the jurisprudence, not to mention common sense, takes into account the entirely feasible possibility that an injured worker may not have unerring recall of exactly what happened in all sorts of injury situations.
>
> . . . .
>
> Mrs. Rideaux was working on a fast-moving, non-stop conveyer belt handing up many, dozens perhaps, maybe hundreds of clothes on a rack that was nearly a foot taller than she. Somehow, she says, this stretching caused a knot to develop in her shoulder, along with stiffness. She cannot identify the precise moment in time when the knot developed, nor can she recall the precise garment she was hanging up when the knot began to make its appearance. She didn't know then, and doesn't know now. . . .

8

. . . .

I see nothing in the medical documents that in any fashion suggests that Mrs. Rideaux has ever told any medical provider anything substantially different than she said while testifying on the stand; and importantly, there's nothing in these reports to indicate that the medical providers understood her to say anything, other than that she felt a knot on her shoulder, as she was unloading and hanging garments.

Everybody seems to be clear on this point, except the employer who seems to be attached to the belief that a day after strenuous work, this woman severely injured - after a day of strenuous work, this woman severely injured herself by taking off her blouse before taking a shower.

Rideaux knew that she had injured her arm during the course of her shift on September 7, 2009, when she spent five hours unloading boxes and hanging clothes on an overhead rack in Kohl's warehouse. She reported her injuries to her physician the following morning, and that physician noted objective signs of a right shoulder injury and directed her to seek further medical attention. Since that time, Rideaux has had increased pain in right shoulder, which has radiated to her neck and right forearm, and for which she has consistently sought treatment. We agree with the WCJ's conclusion that the discrepancies noted in the accident report are minor given the big picture. After review of the entire record before us, we cannot say that the WCJ manifestly erred in finding that Rideaux sustained an injury-producing accident while working at Kohl's. The WCJ obviously found Rideaux to be a credible witness, and we will not second guess that credibility determination. Kohl's first and second assignments of error lack merit.

### Indemnity Benefits

Louisiana Revised Statutes 23:1221(1)(c) provides that if an employee is not employed or self-employed, compensation for TTD benefits shall be awarded only if:

[T]he employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.

In *Odom v. Kinder Nursing Home*, 06-1442, p. 5 (La.App. 3 Cir. 4/25/07), 956 So.2d 128, 132, we directed that:

"The issue of disability within the framework of the workers' compensation law is a legal rather than a purely medical determination. *LeBlanc [v. Grand Isle Shipyard, Inc.*, 95-2452 (La.App. 1 Cir. 6/28/96) ], 676 So.2d [1157,] 1161. The issue of disability is determined with reference to the totality of the evidence, including both lay and medical testimony. *LeBlanc*, 676 So.2d at 1161." *Walker v. High Tech Refractory Servs., Inc.*, 03-1621, p. 4 (La.App. 1 Cir. 6/25/04), 885 So.2d 1185, 1188.

Kohl's submits that Rideaux failed to produce medical evidence that she suffered any past, present, or future disability so as to be entitled to indemnity benefits. It also claims that Rideaux could return to work as a jewelry associate and that other employees would be available to help with any duties that might affect her right shoulder.

Rideaux counters that she submitted into evidence a letter dated May 21, 2010, declaring her temporarily disabled from working due to her September 2009 shoulder injury. Since that time, she has consistently sought treatment for her injury, and her condition has not improved. Rideaux also points out that Kohl's failed to produce any medical evidence to refute the opinions of her doctors. Finally, Rideaux argues that Kohl's never offered her a modified position and that it should not be able to defeat her claim for indemnity benefits with its vague assertion that a coworker would always be available to assist her if she ever had a problem completing any of the duties required of her.

On May 21, 2010, Dr. Green noted that Rideaux was temporarily disabled from working due to her September 2009 shoulder injury. As late as November 11, 2010, Dr. Cascio reported that Rideaux's right shoulder pain had persisted since her injury and that it woke her up at night. Rideaux testified that her whole life has changed since her injury and that she is still plagued by pain in her right shoulder and weakness in her right hand. Kohl's claims that it offered Rideaux a modified position but presented no evidence that her duties would have been altered in any way from how they were before her accident, instead contending that a coworker would be available to assist her whenever necessary. On the other hand, Kohl's never paid for Rideaux to see a physician, never got a second medical opinion, never sent her to vocational rehabilitation, and never paid her any indemnity benefits. Given the totality of the evidence and testimony, we cannot say that the WCJ erred in making the legal determination that Rideaux proved her entitlement to TTD benefits.

### Penalties and Attorney Fees

Louisiana Revised Statutes 23:1201 is the relevant statute in determining whether an employer should be assessed penalties and attorney fees for failure to timely pay indemnity or medical benefits. The statute provides that no penalties or attorney fees shall be assessed "if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer . . . had no control. La.R.S. 23:1201(F)(2).

> An employer avoids the imposition of penalties and attorney's fees by satisfying its continuing obligation to investigate, assemble, and assess factual information prior to it denying benefits. Furthermore, the decision to award penalties and attorney's fees is factual in nature and will not be reversed on appeal absent manifest error.

*Odom,* 956 So.2d at 141-42 (citations omitted). "The purpose of imposition of penalties and attorney fees is to discourage indifference and undesirable conduct by employers and insurers." *Burns v. Interstate Brands Corp.,* 09-705, p. 7 (La.App. 3 Cir. 2/3/10), 30 So.3d 271, 277.

In seeking to have this court reverse the WCJ's award of penalties and attorney fees, Kohl's contends that it did reasonably controvert Rideaux's claim. It argues that Rideaux did not suffer a compensable accident, that she presented grossly inconsistent accounts of the accident, and that she failed to present any medical evidence of a causal connection between a work accident and her right shoulder condition or of any past, present, or future disability. Finally, it claims that it had strong reason to question Rideaux's credibility. Rideaux counters that the WCJ correctly determined that Kohl's failed to conduct a meaningful investigation in her work accident and the injuries she suffered as a result of that accident.

> In awarding Rideaux penalties and attorney fees, the WCJ commented:
>
> [I]t is awfully hard to avoid the conclusion that Kohl's made up its corporate mind that no workers' compensation claim was warranted here and went about discovering bits and pieces of evidence to support its position. That's not what the law, and common compassion requires. An employer, when notified of an injury, is required to investigate. This employer seems to skip right over that step and move right on to preparation for litigation.

All of the arguments that Kohl's offers in support of its contention that it had reason to deny Rideaux's claim of injury and disability have been rejected in our discussion of Kohl's first three assignments of error. After reviewing the testimony and evidence in this matter, we find no manifest error in the WCJ's finding that Kohl's did not "reasonably controvert" Rideaux's claim. Accordingly, the WCJ did not err in awarding penalties and attorney fees to Rideaux.

*Amount of Attorney Fees*

In *Broussard v. Louisiana Radio Communications*, 10-840, p. 13 (La.App. 3 Cir. 2/2/11), 54 So.3d 1274, 1283 (citation omitted), we stated:

> In fixing an amount of attorney fees in a workers' compensation case, the workers' compensation judge may consider factors such as the degree of skill and ability exercised by the attorney, the amount of the claim, the amount recovered by the claimant, and the amount of time the attorney dedicated to the case. The amount of the attorney fee is subject to the discretion of the workers' compensation judge, provided the record supports the amount awarded.

"[A] trial court need not hear evidence pertaining to the time spent by counsel on a matter in order to decide the amount of attorney's fees to award, as the amount of work performed will be obvious from the record." *Capdeville v. Winn-Dixie Store No. 1473*, 05-870, pp. 8-9 (La.App. 3 Cir. 3/1/06), 923 So.2d 900, 905.

Kohl's contends that even if we affirm the WCJ's award of attorney fees, there is no evidence in the record to support an award of $14,500.00, an amount in excess of the total award to Rideaux. It submits that in the absence of testimony or a written itemization from Rideaux's attorney as to the time spent in this matter, the amount awarded is excessive and unreasonable. Rideaux contends that the record does support the amount of attorney fees awarded, given the amount of experience and skill necessary to combat the aggressive stance taken by Kohl's. Rideaux also submits that because it took as much effort to bring her case to trial as it would have had she been a full-time Kohl's employee, this court should not penalize her or her attorney for pursuing this case in spite of the fact that she was a part-time employee.

When the WCJ announced the $14,500.00 attorney fee award at its oral pronouncement of judgment, counsel for Kohl's stated that he had not received a fee statement from Rideaux's counsel. Although the WCJ did not have its file, it

stated that it generally used a fee statement to arrive at the amount of attorney fees to be awarded.

The record on appeal does not contain a fee statement from Rideaux's counsel or any other indication as to the amount of time that he spent on this matter. After considering the factors that we enunciated in *Broussard*, 54 So.3d 1274, we find that the WCJ abused its discretion in awarding Rideaux $14,500.00 in attorney fees, and we amend the award to $7,500.00, an amount that we find supported by the record.

### Rideaux's Answer to Appeal

In *Nash v. Aecom Technology Corp.,* 07-990, p. 8 (La.App. 3 Cir. 2/6/08), 976 So.2d 263, 268, this court held that "[a] workers' compensation claimant is entitled to an increase in attorney fees to reflect additional time incurred in defending an employer/insurer's unsuccessful appeal."

Rideaux answered Kohl's appeal seeking additional attorney fees for the work incurred in handling this appeal. We award Rideaux an additional attorney fee of $3,500.00 for the work done on appeal.

### DECREE

The judgment rendered by the workers' compensation judge in favor of Terry Rideaux and against Kohl's Department Stores, Inc. is amended to reflect an attorney fee award of $7,500.00 rather than $14,500.00. The judgment is affirmed in all other respects. Rideaux is awarded additional attorney fees of $3,500.00 for work performed on this appeal. All costs of this appeal are assessed against Kohl's Department Stores, Inc.

**AFFIRMED AS AMENDED.**

14