STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-522


KENT NORMAND

VERSUS

DRESSER INDUSTRIES, INC.


**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 2
PARISH OF RAPIDES, NO. 07-08419
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

**********

PHYLLIS M. KEATY
JUDGE

**********

Court composed of Sylvia R. Cooks, James T. Genovese, and Phyllis M. Keaty, Judges.


AFFIRMED AS AMENDED.

George A. Flournoy
Flournoy & Doggett
Post Office Box 1270
Alexandria, Louisiana  71309-1270
(318) 487-9858
Counsel for Plaintiff/Appellee:
        Kent Normand

Mark A. Watson
Stafford, Stewart & Potter
Post Office Box 1711
Alexandria, Louisiana  71309
(318) 487-4910
Counsel for Defendants/Appellants:
        Dresser Industries, Inc.
        Liberty Mutual Insurance Company

**KEATY, Judge.**

Dresser Industries, Inc. (Dresser) and its workers' compensation insurer, Liberty Mutual Insurance Company (Liberty Mutual), appeal a judgment rendered by the workers' compensation judge (WCJ) in favor of its former employee, Kent Normand (Normand), awarding him benefits, reimbursements, penalties, and attorney fees. Normand answers the appeal. For the following reasons, we amend the judgment to award Normand an additional $2,000.00 penalty, affirm as amended, and award Normand $4,000.00 in attorney fees for work done on this appeal.

## FACTS AND PROCEDURAL HISTORY

Normand injured his neck and back in a forklift accident at work in 2005. Dr. Clark Gunderson, an orthopedic surgeon, performed a lumbar fusion on Normand in June of 2007. Normand remained under the active care of Dr. Gunderson until April 16, 2010, when Dr. Gunderson declared that he had reached maximum medical improvement (MMI).

Normand filed a 1008 Disputed Claim for Compensation on October 31, 2007, alleging that Dresser was guilty of non-payment and/or untimely payment of his medical and travel expenses. The matter was tried on July 22, 2010. At the beginning of trial, the parties stipulated that Normand's average weekly wage was not at issue and that Liberty Mutual was Dresser's workers' compensation insurer at all times pertinent to this case. They further stipulated that Normand was paid temporary total disability benefits (TTDs) up until March 31, 2010. In addition, it was stipulated that if she were called to testify, Liberty Mutual's adjuster, Ginger Neal, would state that Normand's indemnity benefits were discontinued on March 31, 2010, based on deposition testimony given by Normand that he had taken retirement from Dresser.

The WCJ issued an oral ruling on October 18, 2010. Written judgment was rendered on October 20, 2010, declaring that: 1) Normand was entitled to TTDs from April 1 through April 16, 2010; 2) Normand was entitled to supplemental earnings benefits (SEBs), based on zero earnings, from April 17, 2010, through the date of trial and continuing thereafter; 3) Dresser was ordered to reimburse Normand's medical travel expenses of $29.93 and the advance payment of $1,400.00 for Dr. Charles Aprill's initial treatment; 4) Dresser was ordered to pay the remainder of Dr. Aprill's bill for treatment of Normand's work injuries; 5) Dresser was ordered to pay Normand $6,000.00 in penalties under La.R.S. 23:1201(F) for its multiple untimely payments of indemnity benefits, failure to pay for Dr. Aprill's treatment, and failure to fully reimburse Normand's medical travel expenses; 6) Dresser was ordered to pay Normand $8,000.00 in penalties under La.R.S. 23:1201(I) for its arbitrary discontinuation of plaintiff's indemnity benefits; 7) Dresser was ordered to pay Normand's attorney a $7,500.00 fee under La.R.S 23:1201(J); and, 8) Dresser was assessed with all costs. A partial new trial was later granted ordering Dresser to reimburse Normand for his medical travel expenses of $542.24 and otherwise enforcing the earlier judgment.

Dresser now appeals, asserting that the WCJ committed legal error in holding that it had the burden of proving that Normand had retired. As a result, it submits that we should perform a de novo review instead of applying the usual manifest error standard of review. Next, it claims that the WCJ erred in finding that Normand had not retired within the meaning of La.R.S. 23:1221(3)(d)(iii). Normand answered the appeal, seeking an increase in La.R.S. 23:1201(F) penalties and an award of attorney fees for work done on this appeal.[1]

---

[1]Although Normand also sought an increase in the original attorney fee award in his answer to appeal, he waived that claim in his brief to this court.

# DISCUSSION

"Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. In applying the manifest error standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one." *Foster v. Rabalais Masonry, Inc.*, 01-1394, p. 2 (La.App. 3 Cir. 3/6/02), 811 So.2d 1160, 1162, *writ denied,* 02-1164 (La. 6/14/02), 818 So.2d 784 (citation omitted). On the other hand, where the WCJ has made a legal error and a complete record is available, the appellate court must conduct a de novo review. *Grillette v. Alliance Compressors*, 05-982 (La.App. 3 Cir. 2/1/06), 923 So.2d 774.

"An injured worker is entitled to receive temporary total disability benefits from the date of his disabling injury until either party shows a lawful ground for a change in his status." *Clark v. State, Dep't of Corrs.*, 94-168, p. 3 (La.App. 3 Cir. 10/5/94), 643 So.2d 467, 469. "It is well established in Louisiana jurisprudence that an employer can change temporary total disability benefits to supplemental earnings benefits only when the employee has been released back to work by his treating physician." *Id.*

> "The purpose of SEBs is to compensate the injured employee for the wage earning capacity he has lost as a result of his accident." *Pinkins v. Cardinal Wholesale Supply, Inc.,* 619 So.2d 52, 55 (La.1993). An employee is entitled to receive supplemental earnings benefits (SEBs) if he sustains a work-related injury that results in his inability to earn ninety percent (90%) or more of his average pre-injury wage. La.Rev.Stat.Ann. § 23:1221(3)(a) (West Supp.1997).

*Banks v. Indus. Roofing & Sheet Metal Works*, 96-2840, p. 8 (La. 7/1/97), 696 So.2d 551, 556. Louisiana Revised Statutes 23:1221(3)(d) provides, however, that:

> The right to supplemental earnings benefits . . . shall in no event exceed a maximum of five hundred twenty weeks, but shall terminate:
>
> . . . .

3

> (iii) When the employee retires; however, the period during which supplemental earnings benefits may be payable shall not be less than one hundred four weeks.

In *Key v. Monroe City School Board*, 45,096, p. 6 (La.App. 2 Cir. 3/10/10), 32 So.3d 1144, 1149-50 (citations omitted), the second circuit explained:

> The retirement referred to in § 1221(3)(d)(iii) is not resignation from work because of disability; it refers only to a worker who has no intention of returning to work regardless of disability. When a worker has retired from a heavy work duty job but is still willing to take on light duty employment within the scope of the limitations imposed by her disability, then that worker is said not to have withdrawn from the workforce and is not considered retired under § 1221(3)(d)(iii).

In this case, Dresser voluntarily paid Normand TTDs through March 31, 2010, at which time it discontinued his indemnity benefits based upon testimony given in his July 20, 2009 deposition that he had retired from Dresser on April 1, 2009. Accordingly, it was not paying Normand any benefits at the time of trial.

Normand testified that because a new employee contract was coming up at Dresser that May of 2009, he chose to retire in April of 2009 rather than risk losing benefits that he considered to be "good enough" under the existing contract. With regard to his current condition, Normand stated that he still had pain in his neck and back, but not nearly as much as he had previously suffered. He unequivocally stated, however, that none of his residual complaints from the 2005 accident played any part in his decision to retire. Normand testified that he had looked in the newspaper for a job that would not hurt his back or his neck and that he had spoken to a friend several times about working for him delivering automobiles, but nothing had been available at those times.

Normand's girlfriend of four years, Ruby Bordelon, confirmed that Normand had looked for work since he left Dresser. When asked if Normand had ever indicated that he never intended to go back to work, she responded, "[n]o."

4

## Burden of Proof

In its brief to this court, Dresser asserts that "[a]n employer can challenge a claimant's claim to workers' compensation benefits at any time, with the burden on the claimant to show by 'by clear and convincing evidence, unaided by any presumption of disability' the claimant's rights to benefits," citing in support of that statement La.R.S. 23:1221(2)(c) and *Williams v. Midwest Industrial Contractors*, 04-1856 (La.App. 4 Cir. 5/18/05), 905 So.2d 335. Then, based on the following statement from the WCJ's reasons for judgment, "it was not shown that Mr. Normand had retired," Dresser claims that the WCJ erred in placing the burden on it to prove that Normand had retired.

Dresser's argument fails for several reasons. First, the portion of the statute referred to by Dresser above is found in the section concerning permanent total disability benefits, not supplemental earnings benefits. Second, because Dresser chose to stop paying indemnity benefits to Normand instead of simply converting its payment from TTDs to SEBs, Normand was required to prove that he was entitled to receive benefits and that Dresser's discontinuation of those benefits was arbitrary and capricious. Normand met his initial burden of proof. He showed that he was entitled to receive TTDs until Dr. Gunderson declared that he had reached MMI on April 16, 2010, and that he was entitled to receive SEBs thereafter. Only then did the burden shift to Dresser to prove that Normand had retired under La.R.S. 23:1221(3)(d)(iii). There is no merit to Dresser's contention that the WCJ applied the wrong burden of proof regarding whether or not Normand had retired. Accordingly, we will apply the manifest error standard of review in assessing Dresser's second assignment of error.

### *Did Normand Retire?*

Dresser claims that the WCJ clearly erred in finding that Normand had not retired within the meaning of La.R.S. 23:1221(3)(d)(iii), arguing that the totality of the facts and circumstances indicate that Normand retired and has withdrawn from the work force. It characterizes Normand's efforts to find another job as minimal and unverifiable.

Normand disagrees, pointing to his testimony that he did not completely withdraw from the work force, that he did not consider himself fully retired, that he was willing to work, and that he looked for work within the physical limitations set forth by Dr. Gunderson. Based on the foregoing, Normand submits that the WCJ's factual determination that he had not retired is not manifestly erroneous and should be upheld.

The WCJ was presented with conflicting testimony and evidence concerning whether Normand had retired. Ultimately, the WCJ made the factual determination that Normand had not retired from Dresser. After reviewing the record in its entirety, we conclude that that factual determination was not manifestly erroneous or clearly wrong. Accordingly, there is no merit to Dresser's second assignment of error.

In its brief to this court, Dresser complains that regardless of whether we affirm or reverse the WCJ, the October 20, 2010 judgment does not address the retirement issue, thereby leaving unresolved the question of whether the judgment decided the retirement issue for res judicata purposes. The WCJ clearly stated in its oral reasons for judgment that "it was not shown that Mr. Normand had retired." Nevertheless, the written judgment failed to contain that finding of fact, even though the retirement question was the chief focus of the trial and even though resolution of that question was central to the judgment that was rendered.

Accordingly, we amend the October 20, 2010 judgment to include the following: "IT IS ORDERED, ADJUDGED, AND DECREED that plaintiff has not retired within the meaning of La.R.S. 23:1221(3)(d)(iii)."

*Penalties*

"Awards of penalties and attorney's fees in workers' compensation [cases] are essentially penal in nature, being imposed to discourage indifference and undesirable conduct by employers and insurers. Although the Workers' Compensation Act is to be liberally construed in regard to benefits, penal statutes are to be strictly construed." *Williams v. Rush Masonry, Inc.*, 98-2271, pp. 8-9 (La. 6/29/99), 737 So.2d 41, 46 (citation omitted). An appellate court reviews the WCJ's decision to award penalties and attorney fees using the manifest error/clearly wrong standard of review. *Ducote v. La. Indus., Inc.*, 07-1536 (La.App. 3 Cir. 4/2/08), 980 So.2d 843.

In his answer to appeal, Normand contends that the WCJ erred in awarding him a single $2,000.00 penalty for the multiple instances where Dresser either made late payments or failed to pay his medical travel expenses. In brief, he points to nine separate demands for travel expenses that were made to Dresser, each of which was paid late or not at all. Normand acknowledges, however, that because of the statute's cap, Dresser cannot be assessed more than $8,000.00 in penalties. Dresser chose not to address the additional penalties issue, even though Normand's answer to appeal was filed several weeks before its appellate brief was due.

Louisiana Revised Statutes 23:1201(F) provides that an employer's "[f]ailure to provide payment in accordance with this Section" **shall** result in assessment of a penalty of up to $2,000.00 for any claim up to a maximum of $8,000.00 regardless of the number of penalties imposed. Here, the WCJ awarded Normand a total of "$6,000 in 23:1201(F) penalties due to defendant's multiple

untimely payments of indemnity benefits, failure to pay for Dr. Aprill's treatment and failure to reimburse fully plaintiff's medical travel expenses." In choosing to award Normand a single $2,000.00 penalty for Dresser's having made "exceedingly late" payments of his medical travel expenses, the WCJ found that Normand had not met his burden of proof of his entitlement to multiple penalties as there was no evidence presented to show why those payments were made late.[2] The WCJ justified the single penalty by noting that penalty statutes are to be strictly construed and by distinguishing this matter from *Burnett v. Village of Estherwood*, 09-680, p. 6 (La.App. 3 Cir. 12/9/09), 25 So.3d 997, 1001, where this court found that three separate penalties were due where "there were three separate mileage submissions which were either underpaid or paid late for different reasons."

Once Normand provided clear evidence that he had made multiple requests to Dresser to reimburse him for separately incurred medical travel expenses and that Dresser had either failed to pay or made late payment of those expenses, he met his burden of proving that he was entitled to multiple penalties up to the maximum allowed by the statute. The burden should have shifted to Dresser to prove why each of those requests were either paid late or not paid, including whether those late or non-payments were due to a single clerical error, such as was the case in *Ducote,* 980 So.2d 843. The WCJ erred in holding Normand responsible for the lack of evidence as to Dresser's reason(s) for late or non-payment and in awarding him only a single penalty for Dresser's late or non-payment of his medical travel expenses. Accordingly, we award Normand an additional $2,000.00 penalty under La.R.S. 23:1201(F).

---

[2] In its oral reasons for judgment, the WCJ admitted that he "came into confusion" when trying to reconcile Normand's demand letters for medical travel expenses with Dresser's payment log.

*Attorney Fees*

In his answer to appeal, Normand requests additional attorney fees for work done on this appeal. In *Nash v. Aecom Technology Corp.*, 07-990, p. 8 (La.App. 3 Cir. 2/6/08), 976 So.2d 263, 268, this court held that "[a] workers' compensation claimant is entitled to an increase in attorney fees to reflect additional time incurred in defending an employer/insurer's unsuccessful appeal." We award Normand an additional attorney fee of $4,000.00 for the work done on appeal.

## DECREE

For the foregoing reasons, we amend the October 20, 2010 judgment to award Normand an additional $2,000.00 penalty and to include the following language: "IT IS ORDERED, ADJUDGED, AND DECREED that plaintiff has not retired within the meaning of La.R.S. 23:1221(3)(d)(iii)." We affirm as amended and award Normand $4,000.00 in attorney fees for work done on this appeal.

**AFFIRMED AS AMENDED.**