# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 21-795


TIMOTHY BATISTE

VERSUS

MINERALS TECHNOLOGY, INC.


**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 4
PARISH OF LAFAYETTE, NO. 17-02865
ANTHONY PAUL PALERMO, WORKERS COMPENSATION JUDGE

**********

## ELIZABETH A. PICKETT
## JUDGE

**********

Court composed of Elizabeth A. Pickett, D. Kent Savoie, and Van H. Kyzar, Judges.


**AMENDED IN PART; AFFIRMED AS AMENDED; AND RENDERED.**

Michael Benny Miller
Post Office Drawer 1630
Crowley, LA 70527
(337) 785-9500
COUNSEL FOR PLAINTIFF-APPELLANT
    Timothy Batiste

Scott T. Winstead
Doris A. Royce
Thompson, Coe, Cousins & Irons, LLP
650 Poydras, Suite 2105
New Orleans, LA 70130
(504) 526-4350
COUNSEL FOR DEFENDANT-APPELLEE
    Minerals Technology, Inc.

**PICKETT, Judge.**

A workers' compensation claimant appealed the workers' compensation judge's judgment which awarded some, but not all, of the relief he sought. He assigns five errors with the judgment. We amend the judgment in part, affirm it as amended, and render judgment in the claimant's favor.

**FACTS**

This matter was previously before this court in *Batiste v. Minerals Technology, Inc.*, 20-327 (La.App. 3 Cir. 5/5/21), 319 So.3d 396. Therein, another panel of this court concluded that the judgment rendered by the workers' compensation judge (WCJ) was "not a final judgment over which we have appellate jurisdiction as it does not contain appropriate decretal language." *Id.* at 400. As a result, the appeal was dismissed, and the matter was remanded to the workers' compensation court instructing it to issue another judgment that includes proper decretal language.

Before reaching that conclusion, the panel of *Batiste*, *Id.* at 397-399, set forth the following facts of this matter, which we adopt:

> On May 11, 2017, claimant, Timothy Batiste, filed a disputed claim for compensation with the Louisiana Office of Workers' Compensation. Therein, he alleged that he was a night supervisor at Mineral[s] Technology, Inc. (MT), and that on April 13, 2017, he injured his back when lifting dimethecone talc. He further alleged that the "bona fide dispute" was MT's failure to pay weekly compensation benefits, its failure to authorize medical treatment with Dr. [Michel] Heard, and its failure to approve his choice of physician. Batiste also sought penalties and attorney fees.
>
> Trial was held [November 14], 2019. Batiste stated in his pre-trial memorandum that at issue for trial was whether he was injured at work on April 13, 2017, and on April 20, 2017. He asserted that on April 20, 2017, he "reinjured his back" when "reaching into the blender to clean it and felt a pop in his lower back." He further alleged that he sustained injuries to his back, leg, neck, and shoulder, as well as suffered from headaches, as a result of the two work accidents. Batiste argued to the workers' compensation court that he was entitled to weekly compensation benefits at $580.86 per week, but possibly

more, due to the lack of information MT provided in discovery. According to Batiste, his doctor released him to return to sedentary work only; however, MT was unable to provide him with a sedentary position, but rather only a "light duty job" that he could not perform. Batiste did not return to work following April 20, 2017, and he was terminated by MT as of June 2, 2017. Batiste further argued to the workers' compensation court that weekly benefits were due fourteen days from the April 20, 2017 accident and his "claim was found compensable on June 13, 2017," but MT failed to pay weekly compensation benefits or medical bills.

Batiste also sought a judgment from the workers' compensation court for "all reasonable and necessary medical treatment for his back injury," as well as penalties and attorney fees for MT's failure to pay indemnity benefits, and its failure to, on twelve separate instances, authorize medical treatment, pay various medical bills, and/or pay mileage reimbursement. [1] In his post-trial memorandum, Batiste further asked the workers' compensation court to set a hearing under La.Code Civ.P. art. 863 to impose sanctions on MT and counsel who filed improper pleadings.

In response, MT argued in its post-trial brief to the workers' compensation court that weekly compensation benefits were not, and are not, owed because Batiste was terminated for cause. Specifically, MT asserted that it referred Batiste to Dr. Caillet with Stafford Healthcare following the work accidents at issue, and, on April 28, 2017, Batiste was released by Dr. Andree Caillet to sedentary work with frequent breaks to stand and stretch. According to MT, it scheduled Batiste for this type of work May 4 through May 21, 2017, but Batiste did not show up or call in on any of these days.

MT further argued to the workers' compensation court that it received and approved Batiste's signed choice of physician form selecting Dr. Heard, "compensability of Batiste's claim was officially accepted on June 13, 2017," and it approved the only treatment properly submitted for approval in accordance with the Louisiana Workers' Compensation Act. According to MT, Dr. Heard did not submit any form 1010's recommending or requesting approval of any other specific treatment. In addition, according to MT, the only form 1010 it did receive was from Dr. Caillet seeking approval of physical therapy, which MT approved; however, Batiste failed to seek physical therapy.

---

[1] According to Batiste, these include a $1,500 bill from Dr. Heard and paid by Batiste's counsel; a $568 bill from Lafayette Medical Center; a $1,360 bill from Coolidge Emergency Group, an $18.42 bill from Regional Radiology; a $10.32 bill from Walmart for medication; a $761 bill for Congress Emergency Group; a $43.53 bill from Walgreens; a request for mileage reimbursement on November 7, 2018, for visits to Walmart and Lafayette General Medical Center; a November 27, 2018 request for mileage reimbursement for visits to Dr. Heard and Stafford Clinic.

2

MT also argued to the workers' compensation court that there was no medical evidence establishing the causation or medical necessity of emergency room treatment on June 15, 2018, and, alternatively, $750 per provider is the most it could be liable for nonemergency medical treatment that was not preauthorized. In addition, MT argued that it was not liable for penalties and attorney fees for its handling of Batiste's claim because the claim was reasonably controverted. In addition, MT argued that it was not liable for penalties and attorney fees for its handling of Batiste's claim because the claim was reasonably controverted.

On remand, the WCJ issued a new judgment in favor of Batiste and against MT, awarding him: (1) "supplemental earnings benefits [SEBs] beginning April 21, 2017[,] at the rate of $585.85 per week until modified, bearing legal interest at the rate of 4.25% per annum from the date of each indemnity is due until paid"; (2) eleven of the twelve medical expenses Batiste sought to recover "bear[ing] legal interest at the rate of 4.25% from the date expense is incurred until paid"; (3) "$2,000 in penalties for failure to provide medical treatment"; (4) $5,000 in attorney fees; and (5) "legal interest at the rate of 4.25% per annum from the date of judgment" on the awards for penalties and attorney fees. The WCJ denied Batiste's request for penalties and attorney fees for MT's failure to pay indemnity benefits. Batiste appealed the judgment and assigns five errors with the WCJ's judgment.

## ASSIGNMENTS OF ERROR

(1) The workers' compensation judge failed to award penalties for failure to pay indemnity benefits.

(2) The workers' compensation judge erred in failing to award an $8,000 penalty for failure to provide medical treatment on many occasions.

(3) It was error for the workers' compensation judge to limit the attorney fee award to $5,000.

(4) The workers' compensation judge failed to award legal interest on indemnity and medical benefits, penalties and attorney fees against Minerals Technology.

(5) The assessment of court cost[s] for both appeals should be assessed against Minerals Technology.

## DISCUSSION

### *Standard of Review*

"Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review." *Banks v. Indus. Roofing Sheet Metal Works, Inc.*, 96-2840, p. 7 (La. 7/1/97), 696 So.2d 551, 556. A WCJ's decision to impose penalties is also subject to the manifest error or clearly wrong standard of review. *Pickett v. J.B. Tuck Land Clearing*, 12-1409 (La.App. 3 Cir. 5/1/13), 157 So.3d 34. When applying the manifest error-clearly wrong standard, we do not determine "whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one." *Stobart v. State, Through Dep't of Transp. & Dev.*, 617 So.2d 880, 882 (La. 1993). The supreme court further explained in *Stobart*, *Id.*, (internal citations and quotation marks omitted):

> [R]easonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. However, where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination.

"Awards of penalties and attorney's fees in workers' compensation are essentially penal in nature, being imposed to discourage indifference and undesirable conduct by employers and insurers. Although the Workers' Compensation Act is to be liberally construed in regard to benefits, penal statutes are to be strictly construed." *Williams v. Rush Masonry, Inc.*, 98-2271, pp. 8-9 (La. 6/29/99), 737 So.2d 41, 46 (citation omitted).

When considering a claim for penalties and attorney fees, "a court must ascertain whether the employer or his insurer engaged in a nonfrivolous legal

4

dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed." *Brown v. Texas–LA Cartage, Inc.*, 98-1063, p. 9 (La. 12/1/98), 721 So.2d 885, 890. A court should not award penalties and attorney fees if the employer presents a "serious defense" in "good faith." *Savoy v. Cecil Perry Improvement, Co.*, 96-889, p. 17 (La.App. 3 Cir. 2/5/97), 691 So.2d 692, 702.

### *Failure to Pay Indemnity Benefits*

Batiste argues that the WCJ erred in finding that MT offered him a sedentary job as approved by MT's physician and failing to award him penalties for MT's termination of his indemnity benefits as provided by La.R.S. 23:1201(I). This aargument presents two issues: (1) did MT offer Batiste a job that met Dr. Caillet's sedentary work restrictions which Batiste refused? and (2) did MT make payments to Batiste in lieu of compensation that entitles him to penalties under La.R.S. 23:1201(I)?

The WCJ awarded Batiste all past due indemnity benefits that he sought to recover without addressing Batiste's claim that two vacation payments MT made to him prior to trial were wages in lieu of compensation. The WCJ did not give MT credit for the vacation payments against the indemnity benefits due to Batiste. The WCJ refused to award Batiste penalties and attorney fees for MT's failing to pay and/or terminating his indemnity benefits, finding that Batiste "was recalcitrant in his dealings with the employer" and that he showed "a singular lack of cooperation in this case." The WCJ further determined that Batiste "blatantly ignored [MT's] offer of employment at sedentary duty" and "prolonged the situation in this case by not attending physical therapy," finding that Batiste acted in such a manner that he "stymie[d] the ability to get him back to work in his

previous position at every turn by failing to comply with the physical therapy that was provided to him."

***Sedentary Duty***

Batiste contends that the WCJ's finding that he ignored MT's offer to return to work on sedentary duty likely caused the WCJ to award him reduced penalties. The records of the Stafford Clinic (the Clinic) show that after she evaluated Batiste on April 21, 2017, Dr. Caillet "released [him] to sedentary light duty work. With frequent breaks to stretch and walk." She clarified his work status in a later note as "sedentary duty with frequent ability to stretch, get up and walk around." Dr. Caillet also recommended physical therapy. MT did not have a position meeting Dr. Caillet's work restrictions.

Batiste had a follow-up appointment with Dr. Caillet on April 28, 2017. After Batiste left his appointment that day, MT notified the Clinic that it had made accommodations to allow Batiste to perform "sedentary work with frequent breaks to stand and stretch." The Clinic's records show it contacted Batiste and informed him of the change in his work status that same day. According to the note, Batiste responded that he was "not concerned with that."

Screenshots of text messages among MT employees and Batiste show MT notified Batiste in a text message on May 2, 2017, at 10:21 a.m., "Tim is now on Light Duty" and instructed him to "Report to Work Thursday 5/4 at 5:45 pm." The record does not include another documented return-to-work notice by MT to Batiste.

Gallagher Bassett Services, Inc. (GB), MT's workers' compensation administrator adjusted Batiste's claim. Its records reference contact with MT on May 2, 2017, noting MT would like Batiste's claim to be considered as "a medical only claim since there are no lost wages and claimant is back to work." The

6

records state that MT reported that it had contacted Batiste about returning to work, and the adjustor noted: "light duty from start – requested to use vacation. Refused light duty that was made available [to] him." On June 7, 2017, however, the adjustor noted: "Employee returned to light duty" and "Employee is not currently incurring lost time benefits, returned to work light duty within waiting period."

On May 22, 2017, MT wrote a letter to Batiste because he had not returned to work. The letter stated, in part:

> Specifically, as noted [] on the enclosed Return to Work Status form dated April 28, 2017, your healthcare provider advises that [MT] has made "accommodations for Mr. Batiste to allow him sedentary work. He will be allowed to do sedentary work with frequent breaks to stand and stretch."

The letter further asserted that Batiste failed to report to work as scheduled on eleven days without calling to report that he would be absent, stating "you have not returned to work since this time period, and you have not responded to repeated efforts by [MT] personnel to contact you in the form of phone calls and text messages." The letter also advised that MT "is willing and able to accommodate your work restrictions, as noted in the enclosed Return to Work Status form." Lastly, the letter instructed Batiste: "Please call . . . as soon as possible. If we do not hear from you within ten (10) calendar days from the date of this letter, we will assume you have abandoned your position, and take necessary action under the Attendance Policy."

Batiste did not contact MT and was terminated June 2, 2017. MT's May 22, 2017, letter was sent by certified mail return receipt requested. The signed receipt was not attached to the letter, but during trial, Batiste acknowledged receiving the letter and explained that he had turned the letter over to his attorney. He was not asked and did not state when he received the letter.

7

Batiste filed his claim on May 23, 2017. By letter dated May 1, 2017, and received May 3, 2017,[2] Batiste's counsel had notified GB that he represented Batiste and instructed GB to contact him, not Batiste, regarding his claim. Counsel also asked that MT notify him if it had a job satisfying Dr. Caillet's sedentary work restriction.

MT's answers to interrogatories also show that it did not offer Batiste sedentary duty. In its third set of supplemental answers to interrogatories, MT responded to Interrogatory No. 11, stating: (1) on April 21, 2017, Dr. Caillet released Batiste to "sedentary work," but "No light duty work was immediately available; (2) "arrangements were made to provide appropriate work" for him; (3) it informed Batiste on April 24, 2017, "that arrangements had been made for his return to light duty," but "Batiste did not report to work;" (4) it informed Batiste on May 2, 2017, "that light duty was available to him," but he "did not report to work" on May 4, 2017, as instructed; (5) and "Batiste abandoned his position and was terminated." MT's answer to Batiste's Interrogatory No. 15 also references Batiste being released to "light duty" and being advised on April 24, 2017, and May 2, 2017, that "light duty" was available to him beginning May 4, 2017, but he did not return and was terminated.

MT's only evidence showing that it instructed Batiste to return to work May 4, 2017, stated that he would be performing light duty. This instruction is contrary to Dr. Caillet's instructions and the Clinic's April 28, 2017, message to Batiste that MT had sedentary work available. The documentary evidence clearly contradicts MT's May 22, 2017, letter stating that it had advised Batiste to return to work performing sedentary duty. MT also claimed Batiste had not responded to attempts

---

[2] GB's receipt of the letter on May 3, 2017, is evidenced by copy of the USPS certified return receipt attached to the letter.

by its personnel to contact him by phone and/or text message. Yet, MT did not introduce testimony, copies of additional text messages, or other evidence showing when and how it notified, or attempted to notify, Batiste of the sedentary position.

The WCJ had the opportunity to view Batiste as he testified regarding MT's attempts to contact him and to evaluate his credibility. Nevertheless, the documentary evidence contradicts the WCJ's conclusion that MT notified Batiste that it had a sedentary position available for him before he filed his claim for benefits and that he failed to return to work after being advised of the position. For these reasons, we find the WCJ manifestly erred in concluding Batiste "ignored [MT's] offer" to return to work in a sedentary capacity.

### Wages in Lieu of Compensation

Batiste next urges that the payments MT made to him for vacation pay represent wages in lieu of compensation and contends that MT's failure to continue payments to him thereafter constitutes the discontinuance of indemnity benefits for purposes of La.R.S. 23:1201(I).[3] Therefore, he argues that he is entitled to a penalty of up to $8,000 for that discontinuance. La.R.S. 23:1221(A), (C). Batiste acknowledges being paid vacation pay by MT on April 30, 2017, and May 14, 2017, but no additional benefits were paid prior to the October 2, 2019 trial.

The WCJ did not address this argument, and it is presumed denied. *M.J. Farms, Ltd. v. Exxon Mobil Corp.,* 07-2371 (La. 7/1/08), 998 So.2d 16. Batiste does not cite any jurisprudence in support of this argument, and our research has not revealed any directly on point. Louisiana Revised Statutes 23:1206 states:

---

[3] Louisiana Revised Statutes 23:1201(I), states, in pertinent part:

Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of a penalty not to exceed eight thousand dollars and a reasonable attorney fee for the prosecution and collection of such claims.

9

"Any voluntary payment or unearned wages paid by the employer or insurer either in money or otherwise, to the employee . . . and accepted by the employee, which were not due and payable when made, may be deducted from the payments to be made as compensation." Such payments are considered to be wages in lieu of compensation. Pursuant to La.R.S. 23:631(D), accrued vacation pay is considered wages "'if, according to the employer's stated vacation policy,' the employee is eligible for and has accrued the right to take vacation time with pay and the employee has not taken or been compensated for the vacation time as of the date of his resignation." *Knight v. Tucker*, 50,993, p. 17 (La.App. 2 Cir. 11/16/16), 210 So.3d 407, 418, *writs denied*, 17-241, 17-247 (La. 4/7/17), 218 So.3d 109, (quoting *Wyatt v. Avoyelles Par. Sch. Bd.*, 01-3180 (La. 12/4/02), 831 So.2d 906).

Batiste was legally entitled to the vacation pay MT paid him. Those payments were neither voluntary nor unearned as contemplated by La.R.S. 23:1206. Accordingly, we find no error with the WCJ's rejection of this argument, and we affirm the WCJ's denial of Batiste's claim for penalties and attorneys for termination of indemnity benefits.

***Failure to Provide Medical Benefits***

Batiste next argues that the WCJ erred in awarding him only one $2,000 penalty for MT's failure to timely reimburse his medical expenses under La.R.S. 23:1201(F).[4] He also argues that he is entitled to a penalty for MT's failure to

---

[4] Louisiana Revised Statutes 23:1201(F) provides for the assessment of penalties for an employer's failure to pay indemnity benefits, medical benefits, and failure to consent to an employee's request to select a treating physician and states, in pertinent part:

> [F]ailure to provide payment in accordance with this Section or failure to consent to the employee's request to select a treating physician . . . shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim.

approve his choice of physician. Awards for penalties under Subsection (F) are limited to $8,000 regardless of the number of claims presented. *Id*. Employers are to pay medical benefits payable within sixty days of receiving written notice of the claim. La.R.S. 23:1201(E)(1). Penalties and attorney fees are not owed "if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control." La.R.S. 23:1201(F)(2). The employer reasonably controverts a claim if it shows that it had "some valid reason or evidence" for denying the claim. *Trahan v. City of Crowley*, 07-266, p. 5 (La.App. 3 Cir. 10/3/07), 967 So.2d 557, 561, *writs denied*, 07-2462, 07-2471 (La. 2/15/08), 976 So.2d 185, 187, respectively.

The WCJ found that Batiste's failure to attend physical therapy prolonged his injury and stymied his ability to return to work. According to GB's notes, physical therapy was authorized on May 10, 2017, and scheduled to begin May 12, 2017. GB's records further state the staff of the approved physical therapy clinic attempted, without success, to contact and notify Batiste of his appointments. Batiste did not attend any of the scheduled physical therapy appointments. By letter dated May 1, 2017, and received May 3, 2017,[5] Batiste's counsel notified GB that he represented Batiste and instructed GB to contact him, not Batiste personally, regarding his claim. Counsel also asked that MT notify him if it had a job satisfying Dr. Caillet's sedentary work restriction.

Louisiana Revised Statute 23:1121(A), governs medical examinations of injured employees and provides, in pertinent part: "An injured employee shall submit himself to an examination by a duly qualified medical practitioner provided and paid for by the employer, as soon after the accident as demanded." Section

---

[5] GB's receipt of the letter on May 3, 2017, is evidenced by a copy of the USPS certified return receipt attached to the letter.

1121(B)(1) further provides: "The employee shall have the right to select one treating physician in any field or specialty." The jurisprudence has long held that these provisions:

> [P]rovide only for the claimant to submit himself for examination and do not require that he submit himself for treatment, the theory behind the Act being that a claimant has the right to be treated by a physician of his own choosing and is not forced to submit to treatment by a physician of his employer's choice.

*Delafield v. Maples*, 6 So.2d 41, 44 (La.App. 2 Cir. 1942). *See also*, *Kennedy v. Washington/St. Tammany Reg'l Med. Ctr*, 15-1099 (La.App. 1 Cir. 4/7/16), 193 So.3d 169. We recognize, however, that when he can, an employee is bound to use all reasonable means afforded him to aid his recovery and to cooperate with his employer to minimize any damage and loss his employer might sustain. *James v. A & B Builders*, 09-781 (La.App. 1 Cir. 10/23/09), 29 So.3d 541.

The WCJ determined that Batiste was not denied medical treatment because he did not "attend the physical therapy that was provided him and insisted on seeing an orthopedist in this case." Batiste sought penalties for MT's failure to reimburse his medical expenses and refusal to approve his choice of physician; he classified both claims as medical treatment. The WCJ did not address Batiste's choice of physician claim separately from his claim for medical expenses; therefore, it is presumed denied. *M.J. Farms, Ltd.*, 998 So.2d 16.

Pursuant to La.R.S. 23:1121(B)(1), "an injured employee [has a] right to his/her choice of physician without prior approval through the 1010 Form, Utilization Review Process." *Spikes v. La. Commerce & Trade Ass'n*, 13-919, pp. 13-14 (La.App. 3 Cir. 7/2/14), 161 So.3d 755, 764, citing Medical Treatment Guidelines and Choice of Physician-Clarifications

*https://www.laworks.net/Downloads/OWC/COP_Bulletin.pdf*.[6] If the employee's chosen physician orders medical care, that care must be requested on a 1010 Form.

Dr. Caillet's notes for Batiste's April 28, 2017, visit state: "Follow up will be with Orthopedic of his choice." The Clinic's records further state that its personnel attempted to contact Batiste regarding Dr. Caillet's referral to an orthopedist on May 10 and 15, 2017, without success. On May 31, 2017, Batiste's counsel notified defense counsel by letter that Batiste selected Dr. Michel Heard as his physician and attached a completed "Right to Choose Your Own Doctor" form. On June 8, 2017, counsel notified MT's defense counsel of Batiste's appointment with Dr. Heard on June 27, 2017, and also reminded defense counsel on June 26, 2017, of Batiste's appointment with Dr. Heard. He requested that defense counsel let him know if the appointment was approved. Batiste attended the appointment as scheduled. On September 8, 2017, defense counsel notified Batiste's attorney that Batiste's appointment with Dr. Heard would be approved "upon receipt of a LWC Form 1010 from Dr. Heard."

GB did not approve physical therapy and scheduling until May 12-15, 2017. Consequently, the WCJ penalized Batiste for failing to answer calls and/or messages coordinated by GB regarding physical therapy well after being instructed to contact Batiste's counsel, not Batiste. Batiste did not notify MT of his choice of physician until May 31, 2017, one month after Dr. Caillet instructed him to see an orthopedist of his choice. As a result, he did not see Dr. Heard until June 27, 2017, two months after being instructed to see an orthopedist of his choice. Nonetheless, MT never approved Batiste's choice of physician, and his attorney had to pay for his visit with Dr. Heard.

---

[6] *See https://www.laworks.net/Downloads/OWC/COP_Bulletin.pdf*, which specifically states "for an injured employee with a compensable injury, neither the treating physician nor the employee's choice of another treating physician in another field or speciality [sic] is required to obtain prior authorization through the filing of a 1010 Form for an initial evaluation/consultation."

13

For these reasons, we find that the WCJ effectively denied Batiste the right to choose his own physician and manifestly erred in failing to award Batiste a penalty for MT's refusal to approve Dr. Heard. Batiste is awarded a $2,000 penalty for MT's failure to approve his choice of physician.

The WCJ awarded Batiste the medical expense reimbursements he requested and awarded him one $2,000 penalty for MT's failure to timely reimburse those expenses. Batiste requested reimbursement of the awarded expenses at least once beginning June 1, 2017, and ending January 11, 2019. He provided notice of two expenses on three occasions. Batiste submitted all of his reimbursement requests to MT more than sixty days before trial. MT did not reimburse any expenses prior to trial and did not offer any defense for its failure to timely pay the expenses.

In *Normand v. Dresser Industries, Inc.*, 11-522 (La.App. 3 Cir. 11/9/11), 79 So.3d 448, the WCJ awarded the claimant a single $2,000 penalty for his employer's "exceedingly late" payments for his medical travel expenses after finding the claimant had not proved his entitlement to multiple penalties because he did not show why those payments were made late. Finding that the WCJ erred in failing to award multiple penalties, this court concluded that once a claimant establishes he submitted requests to his employer for reimbursement of separately incurred medical travel expenses and the employer failed to pay, he met his burden of proving that he was entitled to multiple penalties up to the maximum allowed by the statute. The panel determined that the employer then had the burden of proving why the reimbursements were paid late or not paid. In *Burnett v. Village of Estherwood*, 09-680, p. 6 (La.App. 3 Cir. 12/9/09), 25 So.3d 997, 1001, this court affirmed a WCJ's award of three separate penalties where "there were three separate mileage submissions which were either underpaid or paid late for different reasons."

14

For these reasons, we amend the WCJ's $2,000 penalty for MT's failure to timely reimburse Batiste's medical expenses and increase the penalty to $6,000.

*Attorney Fees*

Batiste next urges that the WCJ's award of $5,000 for attorney fees constitutes error and should be increased because the award is egregiously low in light of the work that counsel had to perform in the workers' compensation court. Specifically, counsel focuses on MT's repeated failures to cooperate with discovery requiring him to attend numerous hearings to address MT's inadequate discovery responses.

As stated above, GB determined Batiste's claim was compensable on June 13, 2017. Still, MT stated in its answer filed June 26, 2017:

> Defendant[] can neither admit nor deny that the alleged injury or occupational disease occurred during the course and scope of employment. However, to the extent an Answer is required, defendants deny that the alleged injury occurred during the course and scope of employment for lack of information sufficient to justify a belief therein.

MT further asserted that Batiste was an independent contractor, was receiving unemployment benefits, willfully intended to injure himself, was intoxicated, and that his work injury was caused by prior injuries. Having already determined Batiste's claim was compensable, MT knew these assertions were not true when it filed its answer. MT also stated in its answer that it had paid all of Batiste's medical expenses, which was not the case.

MT continued to delay the progress of Batiste's claim. When answering Batiste's first set of interrogatories, MT objected to every interrogatory "on the grounds it is vague, overly broad and unduly burdensome" before providing an answer. Batiste filed motions to compel discovery that resulted in MT filing a total of five sets of answers to interrogatories and four responses to requests for

production. On September 22, 2017, the WCJ granted judgment in favor of Batiste on his first motion to compel and denied all of MT's objections to Batiste's interrogatories and requests for production and ordered MT to provide the information and/or documents Batiste requested.

MT did not respond to Batiste's discovery requests in good faith. Due to MT's continued failure to adequately respond to the discovery, Batiste's counsel had to file motions to compel, attend hearings on the motions, then review and compare previous discovery responses to updated responses to determine whether the requested information had been provided and whether previous responses had been modified. Having to do this a total of seven times was time consuming and unnecessarily burdensome on counsel.

Batiste's attorney did not file an affidavit in the record regarding the time he spent preparing and representing Batiste, but he outlined his time in his post-trial brief. In his appellate briefs, counsel updated this information to include the time he spent representing Batiste before the trial court and this court on the first appeal and on this appeal. He seeks an award of $46,800 for the 208 hours he worked at the rate of $225 per hour.[7]

The amount of an award for attorney fees is subject to the discretion of the workers' compensation judge and cannot be reversed unless the record shows the award was manifestly erroneous. *Broussard v. La. Radio Commc'ns*, 10-840 (La.App. 3 Cir. 2/2/11), 54 So.3d 1274. Considering MT's and its counsel failure to be forthright in this matter, we find the WCJ's award is unreasonable in light of

---

[7] In *Broussard v. Louisiana Radio Communications*, 10-840, 16 (La.App. 3 Cir. 2/2/11), 54 So.3d 1274, 1283, this court found counsel's hourly rate to be "well within the norm for matters that got to trial in this area" and "reasonable." After considering "the degree of skill and ability exercised by the attorney, the amount of the claim, the amount recovered by the claimant, and the amount of time the attorney dedicated to the case," the panel affirmed counsel's hourly rate of $225. *Id.*

the work performed by counsel herein and the results he obtained. Accordingly, we find the WCJ's award of $5,000 is abusively low and increase it to $46,800.

*Legal Interest*

Batiste asserts the WCJ erred in not awarding him legal interest on his awards for indemnity benefits, medical benefits, penalties, and attorney fees. As explained above, on remand, the WCJ did award interest on its awards for indemnity benefits, medical treatment, penalties, and attorney fees for MT's failure to pay for medical treatment. The WCJ denied Batiste's claims for penalties and attorney fees for MT's failure to pay indemnity benefits. We determined that Batiste's claim for MT's alleged discontinuance of indemnity benefits lacks merit and affirmed the WCJ's denial of a penalty and attorney fees for that claim. This assigned error need not be addressed.

*Court Costs*

The WCJ did not address the award of court costs in its Judgment. Batiste urges the WCJ erred in failing to assess all court costs against MT. Louisiana Revised Statutes 23:1310.9 provides that all costs shall be assessed against an employer who denied an employee workers' compensation benefits and that denial was "not based on a reasonable ground." The WCJ awarded Batiste indemnity benefits but found that Batiste refused MT's offer of sedentary work. We have concluded that MT did not prove that it offered Batiste the opportunity to return to work on sedentary duty, did not reasonably controvert Batiste's claims for nonpayment of his indemnity benefits and untimely payment of his medical benefits, and failed to approve Batiste's choice of physician. Accordingly, MT has not shown that its denial of benefits to Batiste was "based on a reasonable ground." All costs are assessed against MT.

17

## DISPOSITION

For the reasons discussed above, the judgment awarded by the Workers' Compensation Judge is amended to award a $2,000 penalty for Minerals Technology, Inc.'s failure to approve Batiste's choice of physician; increase the $2,000 penalty for Minerals Technology, Inc.'s failure to timely reimburse Batiste's medical expenses to $6,000; increase the $5,000 award of attorney fees to $46,800; award legal interest on the penalties awarded or increased herein; and award legal interest on the award of attorney fees from the date of the WCJ's judgment until paid. All costs are assessed to Minerals Technology, Inc.

**AMENDED IN PART; AFFIRMED AS AMENDED; AND RENDERED.**